**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NATIONAL SECURITY COUNSELORS,   *
                                 *
            Plaintiff,          *
                                 *
            v.               *     Case: 1:11-cv-00443 (BAH)
                                 *
CENTRAL INTELLIGENCE AGENCY,   *
                                 *
            Defendant.      *
                                 *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLAIMS
ONE AND TWO OF PLAINTIFF'S COMPLAINT**

Plaintiff National Security Counselors ("NSC") commenced this litigation against

Defendant Central Intelligence Agency ("CIA") pursuant to the Freedom of Information Act

("FOIA"), the Administrative Procedure Act ("APA"), and the Mandamus Act to obtain copies

of articles and Tables of Contents from the CIA journal *Studies in Intelligence* and to compel

CIA to reverse its policy of not honoring the legal assignment of FOIA rights.  Defendant has

moved to dismiss Counts One and Two of Plaintiff's Complaint pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure.[1]  (Def.'s Mem. Supp. Def.'s Mot. Dismiss

Claims 1 & 2 of Pl.'s Compl. [hereinafter "Def.'s Mem."].)

**STANDARD OF REVIEW**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to

dismiss a complaint for lack of subject matter jurisdiction.  In ruling on a motion to dismiss

pursuant to Rule 12(b)(1), a court must accept as true all factual allegations contained in the

---

[1] The parties have agreed that Count Three will be handled separately upon the completion of
Defendant's processing of the request.

complaint, and shall construe all inferences in favor of the plaintiff.  *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *SAE Productions, Inc. v. FBI*, 589 F. Supp. 2d 76, 80 (D.D.C. 2008).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides a mechanism for testing the legal sufficiency of the factual allegations in a complaint.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  Under this rule, a court treats the complaint's factual allegations as true and draws all reasonable inferences in plaintiff's favor.  *See Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997); *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can provide no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  *Swierkiewicz v. Sorema*, 534 U.S. 506, 515 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## <u>ARGUMENT</u>

Counts One and Two of NSC's Complaint follow naturally one from the other.  The central issue in both is whether a FOIA requester can legally assign rights in a FOIA request to another requester, and whether the assignee will have standing to engage in litigation with respect to the assigned request.  Count One consists of a "traditional" FOIA claim, in which NSC has sued Defendant regarding FOIA Request F-2008-01105, a request originally filed by Kel McClanahan in his official capacity as Director of FOIA Operations of the James Madison

Project ("JMP"), a non-profit organization created and controlled by Mark Zaid.  When

McClanahan departed JMP to create NSC and serve as its Executive Director, JMP legally

assigned all its legal interests in several FOIA requests that had been McClanahan's personal

research projects (including F-2008-01105) to NSC so that McClanahan could continue his

research without having to start over.  Count Two is a challenge to Defendant's policy, pattern,

or practice[2] of refusing to honor assignments of rights in FOIA requests.  However, NSC

recognizes that if the Court finds that Defendant was correct to refuse to honor JMP's assignment

of rights in FOIA Request F-2008-01105 to NSC, then the Court would be likely to find that the

policy by which Defendant made that determination was legitimate.[3]  Therefore, the Counts will

be addressed in order, in recognition of this relationship.

---

[2] Other than persistently referring to "the CIA's *alleged* policy" (*see generally* Def.'s Mem.) and once mentioning the caveat, "Even if NSC can show that the CIA has a policy of not recognizing the assignment of FOIA rights" (*id.* at 9), Defendant has not seriously raised the argument that such a policy does not exist.  On the contrary, CIA informed the Office of Government Information Services ("OGIS") in June 2010 that this was CIA policy.  (Compl. ¶ 15.) Therefore, NSC will not spend any time arguing against a position that Defendant has not appeared to clearly take.  For the duration of this brief, NSC assumes that there *is* a CIA policy to this effect.  If Defendant seeks to offer the argument in its Reply that no such policy exists, NSC will seek the Court's permission to file a Sur-Reply on that issue.

[3]  The only scenario in which this would not happen would be the unlikely instance in which the Court found that Defendant was required to honor the assignment during the administrative stage, but that NSC lacked standing to litigate the matter.  In that case, the Court would conceivably find that Defendant's policy was improper and that NSC was harmed by Defendant's policy, which would result in a judgment for Defendant on Count One and a judgment for Plaintiff on Count Two.  However, this result would create a large number of logistical issues for agencies, which would counsel against its usefulness, and NSC does not recommend this approach.

I.     **NSC HAS STANDING TO SUE DEFENDANT WITH RESPECT TO FOIA REQUEST F-2008-01105**

NSC does not dispute Defendant's first argument; absent a legal assignment of rights, it would lack standing to pursue litigation regarding that request.  It is axiomatic that only a person (as defined by the Administrative Procedure Act ("APA")) with a legal interest in a FOIA request can litigate that interest.  The only disputed issue is whether a legal interest in a FOIA request can be legally assigned.

Defendant rests its entire case on this point on Judge Huvelle's opinion in the recent case *Feinman v. FBI*, 680 F. Supp. 2d 169 (D.D.C. 2010) [hereinafter *Feinman I*], *discretionary appeal not allowed*, No. 09-2047, 2010 U.S. Dist. LEXIS 23618 (D.D.C. Mar. 15, 2010) [hereinafter *Feinman II*] [hereinafter collectively "*Feinman* litigation"],[4] in which she held that a FOIA request filed by Catherine Beirne with the Federal Bureau of Investigation ("FBI") and legally assigned to Barbara Feinman did not convey standing upon Feinman to litigate the request.  With respect to Judge Huvelle, NSC disagrees with her reasoning in that case.  However, even if this Court accepts the *Feinman I* reasoning, that opinion was limited to a specific set of circumstances that are not present in this case, making *Feinman I* clearly distinguishable.

---

[4] In the interest of full disclosure, Mark Zaid and Bradley Moss, JMP's Executive Director and Deputy Executive Director, respectively, are also counsel for the plaintiffs in the *Feinman* litigation.  In addition to serving as JMP's Deputy Executive Director, Moss also serves in that capacity on the NSC Board of Directors, and Zaid is a member of the NSC Board of Advisors.

A.   *Feinman I* Was Decided in Error

    1.   **Case Law Supports the Assignability of FOIA Litigation Rights**

In order to establish that it has standing to sue, a plaintiff must demonstrate: (1) it has suffered an injury in fact—the invasion of a legally protected interest; (2) the injury is fairly traceable to the defendants' conduct (a causal connection); and (3) a favorable decision on the merits likely will redress the injury.  *Sprint Commc'ns Co., L.P. v. APPC Servs., Inc.*, 554 U.S. 269, 273 (2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  "We have adhered to the rule that a party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.  This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Kowalski v. Tesmer*, 543 U.S. 125, 126 (2004), quoting *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) (quotations omitted).  However, "[a]ssignees of a claim . . . have long been permitted to bring suit."  *See Sprint*, 554 U.S. at 275-86 (describing the evolution over time from English law forbidding all assignments to modern law).  "A party may assign his legal stake *in any litigation* to an assignee." *Berger v. Weinstein*, No. 07-994, 2008 U.S. Dist. LEXIS 59948 at *20 n.4 (E.D. Pa. Aug. 6, 2008) (holding that such an assignment would only confer standing if made before the commencement of litigation) (emphasis added).  "Under *Lujan*, courts must carefully examine whose injury is at issue, and to whom the recovery will go.  If the plaintiff is not the party who sustained the concrete and particularized injury for which a remedy is sought, *and is not the assignee or designated representative of the injured party*, then it does not have standing." *Fla. Dep't of Ins. v. Chase Bank of Tex. N.A.*, 274 F.3d 924, 929 (5th Cir. 2001) (emphasis added).

The essence of Defendant's argument in this case is fundamentally identical to the FBI's argument in *Feinman I*, and equally unconvincing in light of the general rule favoring the free assignability of rights.[5]  According to Defendant, FOIA does not contemplate the notion that anyone other than the "person" who made the request for documents would have standing to sue based on that particular FOIA request.  (Def.'s Mem. at 4-6, citing *Feinman I*, 680 F. Supp. 2d at 173; *SAE Productions*, 589 F. Supp. 2d at 80; and *Three Forks Ranch Corp. v. Bureau of Land Mgmt.*, 358 F. Supp. 2d 1, 2 (D.D.C. 2005).)  Defendant also notes that there is no published case law in which a court has found that an individual has standing based on a FOIA request as the assignee of rights in the request.  (Def.'s Mem. at 6 (recognizing that *Feinman I* was decided on public policy grounds in the absence of any precedent).)

As an initial matter, Defendant is correct that there is no case law that directly supports the notion that NSC has standing.  With the sole exception of *Feinman I*, all of the cases cited by Defendant as support for its argument that assignment is *not* sufficient involved FOIA requests in which the courts found that the plaintiffs lacked standing because they were not the requesters, but *none* of them involved an assignment of legal rights.  *Feinman I* is the only case where a court has ruled on such an assignment.

However, *Feinman I* was not the first time that a court has been asked to address the specific question of Congressional silence on the question of assignability of a statutory right. *See*, *e.g.*, *Washington Hosp. Ctr. Corp. v. Group Hospitalization & Med. Servs., Inc.*, 758 F. Supp. 750, 752 n.2 (D.D.C. 1991) (holding that in the absence of a specific provision in ERISA

---

[5] Defendant's argument has been limited to an assertion that NSC does not have a legally protected interest in a FOIA request that was assigned to it by JMP.  Since Defendant has not raised any causality or redressability arguments, this discussion will be limited to the first prong of the *Lujan* test for standing.

forbidding assignment of claims to health benefits such assignments are not barred).  Moreover, at least one court has expressly recognized *Washington Hospital Center*'s implication that "Congress's laissez-faire attitude of declining to establish any statutory rule either requiring or prohibiting the assignability of benefits" reflected Congress' "cho[ice] not to interfere with the parties' own freedom of contract."  *See St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield*, 49 F.3d 1460, 1464 (10th Cir. 1995).  The *St. Francis* court had good reason to draw this conclusion—the Supreme Court has repeatedly opined that "freedom of contract is . . . the general rule and restraint the exception; and the exercise of legislative authority to abridge it can be justified only by the existence of exceptional circumstances."  *Adkins v. Children's Hosp.*, 261 U.S. 525, 546 (1923).  *See also Frisbie v. United States*, 157 U.S. 160, 165 (1895) ("[G]enerally speaking, among the inalienable rights of the citizen is that of the liberty of contract . . . .");  *Washington Hosp. Ctr.*, 758 F. Supp. at 755 n.5 (recognizing in the assignment context a "general presumption that parties should be free to contract" without opining further on the matter).  Simply put, neither the *Feinman I* defendants nor Defendant provided a compelling argument that an agency's need to minimize the work of its FOIA officers constitutes sufficiently "exceptional circumstances" to warrant such an abridgment of this inalienable right.

    While arguing rather cursorily that the holding in *Feinman I* should be followed in this case, Defendant omits any discussion of the case which was the focal point of the dispute in *Feinman I*: *Sinito v. DOJ*, 176 F.3d 512, 513 (D.C. Cir. 1999).[6]  In *Sinito*, the D.C. Circuit held that FOIA actions seek information, and information has equal value with money or tangible

---

[6] While it is true that Judge Huvelle found that *Sinito* did not support the plaintiff's argument in *Feinman I*, NSC disagrees with that ruling; as a result, the question of *Sinito*'s application to this case is highly relevant.

property.  *Id.* at 515.  Thus, the Circuit clearly held that, absent statutory preclusion, a FOIA requester's rights in a particular request survived death and could be passed to his estate.  *See id.* (noting that if cause of action sounded in property rights or money there would be little doubt). Since rights in a FOIA request can survive death, and given the absence of any clear statutory preclusion with respect to assignments, there is no legitimate basis for finding that rights in a FOIA request can not be assigned to another individual in a manner similar to that in which rights to property or money are assigned.  Such a result would comport with the overall holdings discussed *supra*.

Judge Huvelle distinguished *Sinito* from *Feinman I* on the grounds that Thomas Sinito, the original requester in *Sinito*, having died in the middle of the litigation, was no longer able to protect his rights, and so it was necessary to allow someone else (i.e., his successor or legal representative, in this case, his son) to protect them for him.  *Feinman I*, 680 F. Supp. 2d at 175. In contrast, according to Judge Huvelle, "unlike previous cases [such as *Sinito*] where the plaintiff claims to act *on behalf of* the original requester, Feinman purports to act in her own right, as Beirne has apparently divested herself of all 'rights and interests' in her FOIA request."[7] *Id.*

However, while Judge Huvelle did correctly state that Feinman had no interest in protecting Beirne's rights, and that Beirne had no expectation of such, Feinman never argued that that reason was what made *Sinito* relevant.  What Feinman *did* argue was that the decision in

---

[7] As a mental exercise, it is interesting to consider the question, "What if Thomas Sinito bequeathed 'the right to litigate my FOIA request if you so desire' to his son in his will and then died before filing suit?"  Would *Sinito* have turned out the same way?  If so, then the purported requirement that the successor must "act on behalf of the original requester" would clearly not be a viable consideration for the Court.

*Sinito* was limited to the particular facts at issue in *that* case, and that "the D.C. Circuit merely identified one mechanism (and one set of factors pertinent to that particular mechanism) for promoting 'institutional regularity' by way of a transfer of rights in a FOIA request without necessarily stipulating that other mechanisms would not be permissible."  Pl. Barbara Feinman's Reply Supp. Mot. Cert. Interlocutory Appeal at 4, *Feinman II* [hereinafter *Feinman II* Pl.'s Reply].  In other words, *Sinito* answered the specific question, "Can a dead requester's son take his place in FOIA litigation pursuant to Rule 25(a) of the Federal Rules of Civil Procedure if the requester died during the litigation?"[8]  *See Feinman I*, 680 F. Supp. 2d at 174.  The answer in *Sinito* was, "Yes, because this 'would ensure the protection of the decedent's estate's rights in the claim,' but only if the son is his father's legal representative."[9]  *See id.* at 175 (internal quotation is an actual quote; see Note 8 *supra*).  *Sinito* is relevant to both *Feinman I* and this case because it belies the FBI's argument that "courts have interpreted this language to mean the a person whose name does not appear on the request for documents does not have standing in a subsequent court action based on that request."  Defs.' Mem. Supp. Part. Mot. Dismiss at 7, *Feinman I* [hereinafter *Feinman I* Defs.' Mem.].

By its very existence, *Sinito* stands in silent witness against the implication made by the FBI in both *Feinman* proceedings and Defendant in this briefing that there are *no* exceptions to the rule that the only person who can litigate a FOIA request is the person who filed it.  NSC echoes Feinman's argument that where there is one exception, there is room for others, and that

---

[8] This "quote" and the next are not actual quotations from opinions; their presentation as such is a purely rhetorical device.

[9] The *Sinito* court remanded the case for consideration of whether the son was his father's legal representative, with instructions to allow the substitution if he was.  *Sinito*, 176 F.3d at 517.

the Court cannot reconcile a strict "no exceptions" reading of FOIA's "any person" standard with *Sinito*.[10]  Furthermore, the *Sinito* court even recognized that by ruling the way it did, it "str[uck] a balance, limiting substitution to 'proper parties' in compliance with Rule 25(a)(1) while at the same time protecting any surviving rights of the requestor."  *Sinito*, 176 F.3d at 517.  According to the *Sinito* court, this balance "goes a long way toward assuaging the government's concern that allowing a FOIA case to survive the death of the requestor would allow 'any person' to step into the shoes of the decedent."  *Id.* (internal citations omitted).[11]

In other words, in *Sinito* the court held that in FOIA, a balance was necessary between the presumption of survivability and the statutory silence.  One could just as easily say that a balance is necessary between the presumption of assignability and the statutory silence.  Unlike the plaintiff in *Sinito*, Feinman never argued that "any person" should be able to take over a FOIA request.  Like the limitation in *Sinito* striking a balance by restricting the class of persons who could do so in a survivability context to "legal representatives and successors," Feinman proposed striking a balance in an assignment context to just those individuals who had been properly assigned the rights in the FOIA requests.  *See* Pl. Barbara Feinman's Mem. Law Supp. Mot. Cert. Interlocutory Appeal at 6, *Feinman II* [hereinafter *Feinman II* Pl.'s Mem.].  With

---

[10] In fairness to Judge Huvelle, she did not specifically hold that the FOIA "any person" standard specifically precluded such assignments.  Instead, she discussed the matter for four pages and then declined to rule on it, choosing instead to rely on "policy concerns" for her decision.  NSC raises this argument now for two reasons: a) it believes that Judge Huvelle should not have distinguished *Sinito* the way she did; and b) even if this Court holds that *Feinman I* was decided correctly, it should not be persuaded by any of Defendant's arguments about how "clear" it is that FOIA forbids anyone but the requester from litigating the matter (*see* Def.'s Mem. at 4-5).  Neither *Feinman I* nor *Sinito* support such a position.

[11] Interestingly, the fact that *Sinito* explicitly stated that it was "striking a balance" was addressed by the FBI, who quoted these lines in its Reply.  *See* Defs.' Reply Supp. Part. Mot. Dismiss at 4, *Feinman I* [hereinafter *Feinman I* Defs.' Reply].

respect to Judge Huvelle, it is *this* balance that she should have struck in *Feinman I*, and it is this balance that this Court should strike in this case.

This Court should find that *Feinman I* cannot be reconciled with the general predisposition of courts to recognizing assignees' rights (including those created by statute), the traditional judicial reluctance to recognize statutory abridgements of the inalienable freedom to contract except in "exceptional circumstances," and the specific holding in *Sinito* that rights in FOIA requests are not unalienable. Accordingly, this Court should order Defendant to acknowledge that NSC has "assume[d] the substantive rights conferred by the assignment subject to all existing claims and defenses of the obligor" and correspondingly alter its processing of FOIA Request F-2008-01105 to reflect the change. *See Smith v. Mallick*, 514 F.3d 48, 51 (D.C. Cir. 2008).

### 2. The Logistical Problems Predicted in *Feinman I* Were and Are Without Merit

In response to the arguments discussed above, the defendants in *Feinman I* (echoed by Defendant) argued that "strong policy concerns counsel against permitting such assignments [of FOIA requests]." (Def.'s Mem. at 5-6, quoting *Feinman I*, 680 F. Supp. 2d at 176.) The "policy concerns" centered around the hypothetical logistical consequences that would reportedly ensue if requesters were allowed to assign their rights. *See Feinman I*, 680 F. Supp. 2d at 175-76. However, not only were these logistical problems purely speculative and unrealistic at the time, but they have been clearly demonstrated to be without merit in the intervening period by the very agencies that were involved in the initial litigation.

Judge Huvelle discussed three concerns about allowing assignments of rights in FOIA requests:

1.      Assignees could get a "free ride" on requests because "requesters who need not

pay certain fees [like representatives of the news media] [could] 'share' their

status, via assignment, with potential plaintiffs who would otherwise be required

to pay those fees." *Id.* at 175.

2.      "[A]ssignments would complicate FOIA administrators' adherence to the

principle that disclosure exemptions based on privilege protections should not be

invoked against 'first party' requesters who are the very persons protected by the

privilege." *Id.*

3.      "[T]he agency's burden to verify the validity of an assignment in each instance is

greater than the minimal burden on any given assignee to make her own FOIA

request." *Id.* at 176.

As a preliminary matter, it is worth noting that none of the potential consequences

discussed by Judge Huvelle were actually suggested by any of the parties in *Feinman I*.  None of

these arguments were raised by the defendants.  *See generally Feinman I* Defs.' Mem.  Nor were

they raised for the purpose of refutation by Feinman.  *See generally* Pl.'s Opp'n Defs.' Part. Mot.

Dismiss, *Feinman I* [hereinafter *Feinman I* Pl.'s Opp'n].  Judge Huvelle appears to have

developed these hypothetical problems on her own without any input from anyone from the FBI,

who arguably would have been able to inform her if they were valid concerns.  While the FBI

was quick to voice its support for these hypothetical consequences *after* Judge Huvelle's opinion

was issued (*see* Defs.' Opp'n Mot. Cert. Interlocutory Appeal at 5, *Feinman II* [hereinafter

*Feinman II* Defs.' Opp'n]), and Defendant cites them prominently in this case (*see* Def.'s Mem.

at 6), the *only* potential consequence that was actually raised by the FBI was: "Permitting the

assignment of FOIA rights would turn FOIA's administrative exhaustion requirements on their

head and encourage litigation.  For example, a FOIA requester could receive all she needs from a FOIA request, but then assign it to a third party who could sue on various withholdings, who can in turn assign it to another party."  *Feinman I* Defs.' Mem. at 9.

Curiously, even though this is the only potential consequence actually raised by the defendants, Judge Huvelle does not raise it once as part of her discussion of the public policy concerns; the only mention of administrative exhaustion *at all* in her opinion is the *dicta*, "If anything, the cases discussed above suggest that FOIA should not be interpreted so as to let plaintiffs 'free-ride' on a requester's administrative exhaustion if the plaintiff did not participate in the underlying request."  *Feinman I*, 680 F. Supp. 2d at 174 (never discussing administrative exhaustion again).  Perhaps due to the fact that this is an unsupportable argument, Defendant has not raised it in this case.  As a result, absent a sworn declaration from a knowledgeable agency official attesting that any of the hypothetical consequences constructed by Judge Huvelle are legitimate and practical, it would be improper to dismiss these Counts based on one previous opinion that was *also* missing any evidence provided by agency officials to validate the alleged harm.[12]

---

[12] It is especially ironic that Defendant makes this argument, given that it is simultaneously arguing that NSC's allegations of "speculative future harm" are not persuasive in the two related cases before this Court.  *See*, *e.g.*, Mem. Supp. Def.'s Part. Mot. Dismiss Pl.'s First Am. Compl. at 8, *Nat'l Security Counselors v. CIA*, No. 11-444 (D.D.C. 2011) ("NSC[ ] relies on allegations that it may be harmed in the future that are too speculative to establish standing to seek prospective relief."); Mem. Supp. Def.'s Part. Mot. Dismiss NSC's First Am. Compl. at 9, *Nat'l Security Counselors v. CIA*, No. 11-445 (D.D.C. 2011) ("NSC's allegations that '. . . NSC stands to continue to be harmed by this ongoing practice in the future' are too speculative to establish standing to seek prospective relief.")  Defendant's position appears to be that a plaintiff's allegations of speculative harm are patently insufficient to establish standing but that a defendant's allegations of speculative harm are perfectly sufficient to *defeat* it.

Considering these hypothetical consequences with the inestimable gift of hindsight, the most damning feature is that even the two agencies involved in the litigation, the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI"), do not appear to have believed the arguments *at the time* (or since, for that matter).  Consider the following timeline:

- JMP filed FOIA Request 1126251-000 with the FBI on February 6, 2009.  (JMP-NSC FBI Assignment of Rights, attached as Ex. A.)

- JMP filed Mandatory Declassification Review ("MDR") Request 09-R0360 with the DOJ Office of Information Policy ("OIP") on February 9, 2009.  (JMP-NSC DOJ Assignment of Rights, attached as Ex. I).

- Beirne filed her FOIA request with the FBI on April 13, 2009.  *Feinman I*, 680 F. Supp. 2d at 171.

- Beirne assigned all her rights, benefits, and interests in her FOIA request to Feinman on August 17, 2009.  *Id.*  (*See also* Beirne-Feinman Assignment of Rights, attached as Ex. L.)

- JMP assigned all its rights, benefits, and interests in FBI Request 1126251-000 to NSC on September 16, 2009.  (JMP-NSC FBI Assignment of Rights.)  This Assignment of Rights contained functionally identical language as the Beirne-Feinman Assignment of Rights.[13]  (*Compare id. with* Beirne-Feinman Assignment of Rights.)

- NSC filed an administrative appeal regarding FBI Request 1126251-000 with OIP on September 18, 2009.  (Letter from Jones to McClanahan of 9/23/09, attached as Ex. B.)  NSC attached a copy of the JMP-NSC FBI Assignment of Rights.

- OIP accepted NSC's appeal of FBI Request 1126251-000 on September 23, 2009.  (*Id.*)

- JMP assigned all its rights, benefits, and interests in DOJ Request 09-R0360 to NSC on October 7, 2009.  (JMP-NSC DOJ Assignment of Rights.)  This Assignment of Rights contained functionally identical language as the Beirne-Feinman Assignment of Rights.[14]  (*Compare id. with* Beirne-Feinman Assignment of Rights.)

---

[13] The similarity is not surprising, given that the same attorneys drafted the documents within a month of each other.  *See* Note 4 *supra*.

[14] *See* Note 13 *supra*.

- Feinman filed her complaint on October 30, 2009.  *Feinman I*, 680 F. Supp. 2d at 171.

- DOJ informed JMP that DOJ Request 09-R0360 was being converted to a FOIA request on November 23, 2009.  (Letter from Day to Zaid of 11/23/09, attached as Ex. J.)  On March 18, 2010, DOJ informed NSC that it had made an error by not recognizing the JMP DOJ Assignment of Rights at that time.  (*See* Letter from Day to McClanahan of 3/18/10, attached as Ex. K ("By letter dated October 7, 2009, Mr. Zaid transferred all rights to this request to you on behalf of the National Security Counselors.  We mistakenly directed our response to Mr. Zaid by letter dated November 23, 2009.  We apologize for this oversight.").)

- OIP informed NSC that it was remanding FBI Request 1126251-000 to the FBI for reprocessing on November 9, 2009.  (Letter from McLeod to McClanahan of 11/9/09, attached as Ex. C.)

- The FBI moved to dismiss Feinman from *Feinman I* for lack of standing on December 16, 2009.  *Feinman I*, 680 F. Supp. 2d at 171.

- Judge Huvelle issued her ruling in *Feinman I* on January 26, 2010.  *Feinman I.*

- Feinman requested Judge Huvelle's certification of *Feinman I* for interlocutory appeal on February 7, 2010.  (*Feinman II* Pl.'s Mem.)

- The FBI opposed Feinman's request for certification on March 3, 2010.  (*Feinman II* Defs.' Opp'n.)  In its brief, the FBI defended the validity of all of Judge Huvelle's predicted consequences.  (*See id.* at 5-7.)

- Judge Huvelle issued her ruling denying Feinman's request for certification on March 15, 2010.  *Feinman II.*

- Dennis Argall, the FBI Public Liaison, began discussing the remanded FBI Request 1126251-000 with NSC on May 10, 2010.  (*See* Email from Argall to McClanahan of 7/26/10, attached as Ex. D.)  At this time Argall was aware that JMP had assigned its rights in this request to NSC.  Had he not known this, he could not legally have discussed what would have appeared to be a JMP request with McClanahan, who was no longer affiliated with JMP.

- Argall informed McClanahan on July 26, 2010, that he had directed that FBI Request 1126251-000 be finished as soon as possible.  (*Id.*)

- The FBI provided records in response to FBI Request 1126251-000 to NSC on July 30, 2010, but mistakenly mailed them to McClanahan at JMP's address.  (Letter from Hardy to McClanahan of 7/30/10, attached as Ex. E.)

- NSC filed a second administrative appeal of FBI Request 1126251-000 with OIP on September 23, 2010.  In it, NSC stated: "JMP assigned all rights in this FOIA request to [NSC] on 16 September 2009.  Both the FBI and OIP acknowledged this assignment, so I must conclude that it was merely an administrative oversight that caused the FBI to send this letter and the released records to me care of JMP.  Please ensure that any future correspondence you or the FBI send to me is sent to the correct NSC address listed on the letterhead above."  (Letter from McClanahan to Pustay of 9/23/10 at 1 n.1, attached as Ex. F.)

- OIP accepted NSC's second appeal of FBI Request 1126251-000 on September 30, 2010.  This letter was mailed to NSC's correct address.  (Letter from Jones to McClanahan of 9/30/10, attached as Ex. G.)

- NSC filed this action on February 28, 2011.  (Compl.)

- OIP denied NSC's second appeal of FBI Request 1126251-000 on the merits on April 28, 2011.  (Letter from McLeod to McClanahan of 4/28/11, attached as Ex. H.)

- Defendant filed this Motion to dismiss Counts One and Two for lack of standing on May 20, 2011.  (Def.'s Mem.)

Five critical facts can be derived from this admittedly complex timeline.  First, only three weeks after the FBI received the Beirne-Feinman Assignment of Rights (Aug. 27, 2009), which it purportedly refused to accept because of legal and policy concerns later raised in the defendants' motion to dismiss,[15] OIP accepted the JMP-NSC FBI Assignment of Rights and began processing NSC's appeal of FBI Request 1126251-000 (Sept. 18, 2009).  Second, five weeks before the FBI argued before Judge Huvelle that it could not accept an assignment of rights in a FOIA request (Dec. 16, 2009), OIP remanded FBI Request 1126251-000 to the FBI with specific instructions to reprocess it and release parts to NSC, the assignee of JMP's rights in the request (Nov. 9, 2009).  Both of these facts demonstrate that at the exact time when the FBI was

---

[15] Because Feinman filed suit before she received any acknowledgement from the FBI regarding the assignment, whether or not the FBI would have honored the assignment if she had not filed her complaint when she did may never be known.

purportedly not accepting assignments of rights in FOIA requests because of all the myriad reasons outlined in its initial motion to dismiss, it and its appellate authority had in fact *both* accepted *a functionally identical request* and processed it.  The only explanation for this disconnect is that neither the FBI nor the DOJ actually *had* the reservations about honoring such assignments at the time they told Judge Huvelle they did.

The second set of relevant facts, pertaining to how the FBI and the DOJ handled assignments *after they had already won* in *Feinman I*, is even more perplexing in light of Defendant's arguments.  First, two months *after* Judge Huvelle ruled in favor of the FBI in *Feinman I* (Jan. 26, 2010), and *three days* after she ruled in its favor in *Feinman II* (after it argued in favor of her stated concerns) (Mar. 15, 2010), the DOJ *apologized* to NSC for not properly recognizing and honoring the JMP-NSC DOJ Assignment of Rights when it was processing DOJ Request 09-R0360, calling it an "oversight" (Mar. 18, 2010).  Second, two months later, the second-highest-ranking FBI FOIA official, Dennis Argall, confirmed officially for the first time that the *FBI* (as opposed to OIP or any other DOJ component) was honoring the JMP-NSC FBI Assignment of Rights (May 10, 2010).  Third, and most relevant to this Motion, OIP, which holds the general distinction of being the DOJ expert in FOIA matters, continued processing NSC's second appeal of FBI Request 1126251-000 for seven months until it reached a final decision on April 28, 2011, which it mailed to NSC, the proper assignee of all of JMP's rights and interests in that request, two months *after* NSC filed this action and only *three weeks* before a DOJ attorney stood before this Court and argued that such assignments are improper.

While the first set of facts belied the FBI's arguments in *Feinman I* and *II*, the second set of facts demonstrates that regardless of what arguments Defendant may make about those cases, the two agencies most likely to capitalize on those rulings (since they had fought hard for them)

and refuse to accept any assignments in the future *did absolutely nothing*.  At the risk of

belaboring the point, OIP, the DOJ component recognized throughout the government for its

FOIA expertise, *apologized* to NSC for not properly acknowledging an assignment of rights *mere*

*days* after Judge Huvelle rebuffed Feinman's efforts for the second time.

       Two lessons may be drawn from this overall series of events.  First, *Feinman I* was an

anomaly in an otherwise uninterrupted period of time between August 2009 and April 2011 in

which both the DOJ and FBI were in fact accepting and honoring assignments of FOIA requests,

and that practice did not change even after the FBI argued and won a ruling from Judge Huvelle

that, in the FBI's words, "[p]ermitting the assignment of FOIA rights would turn FOIA's

administrative exhaustion requirements on their head."  *Feinman I* Defs.' Mem. at 9; *see also*

*Feinman I*, 680 F. Supp. 2d at 175 ("[P]re-litigation assignments would multiple opportunities

for mistake and mischief . . . .").  The reasons for this disconnect remain a mystery, but the

implication is undeniable—even the agency directly involved in the *Feinman* litigation did not

believe its parade of horribles.

       Second, and more importantly, even assuming *arguendo* that the FBI and DOJ believed

what they were arguing in the *Feinman* litigation at the time, their actions after they won the

point (twice) clearly demonstrate that they did not interpret Judge Huvelle's opinions to be the

blanket prohibition on assignments of FOIA requests that Defendant argues.  This interpretation

is also supported by the fact that the National Geospatial-Intelligence Agency ("NGA"), a

Department of Defense agency and Defendant's fellow member of the U.S. Intelligence

Community, also recognized JMP's assignment of all rights and interests in a FOIA request to

NSC.  (JMP-NSC NGA Assignment of Rights, attached as Ex. M; Letter from Finn to

McClanahan of 5/24/10, attached as Ex. N ("This letter is in response to the May 12, 2008, FOIA

request submitted to [NGA] by [JMP] and assigned to [NSC] on October 7, 2009.").)  In fact, of all the agencies whose FOIA requests JMP assigned the rights to NSC, only Defendant refused to honor the assignment.[16]  When viewed through this lens, it becomes clear that Defendant's position has less to do with an honest belief that "both case law and strong policy concerns counsel against permitting such assignments" (Def.'s Mem. at 5) and more to do with a long tradition of using procedural obstacles to obstruct the FOIA process (*see generally* all three related cases currently before this Court; *see also* Fred Kaplan, *File Under: Failure*, Slate, Apr. 26, 2011 (detailing ways in which "the CIA is notoriously obstructionist"), *at* http://www.slate.com/id/2292241 (last accessed Jun. 15, 2011)).

Because the evidence supports a finding that *Feinman I* was decided in error and that none of the "concerns" raised by Judge Huvelle were (or are) supported by the factual record, NSC will not further belabor the point by refuting each of the concerns with particularity. Feinman did so in her briefs supporting her request for certification for interlocutory appeal, and any discussion here would be virtually identical to those raised last year in that case.  *See generally Feinman II* Pl.'s Mem. at 7-9; *Feinman II* Pl.'s Reply at 5-6.  However, Judge Huvelle's final observation in *Feinman I* does bear a brief further discussion, as it represents in one sentence the fundamental flaw in this line of argument.  Judge Huvelle opined: "The Court concludes that the agency's burden to verify the validity of an assignment in each instance is greater than *the minimal burden on any given assignee to make her own FOIA request.*" *Feinman I*, 680 F. Supp. 2d at 176 (emphasis added).  Judge Huvelle's opinion notwithstanding,

---

[16] As a more extreme example, Defendant even refused to honor the assignment to NSC of a number of FOIA requests that McClanahan himself had submitted in his own name prior to the creation of NSC.  (*See* McClanahan-NSC Assignment of Rights, attached as Ex. O; Seven Letters from Nelson to McClanahan of 6/7/10, attached as Ex. P.)

both the relevant case law and the factual realities of FOIA support the conclusion that the burden on any given assignee to file its own FOIA request is *anything* but minimal.

  As an initial factual matter, it is apparent that Judge Huvelle drew her conclusion in large part from the FBI's initial assertion in the *Feinman I* briefing that "Feinman will not be unduly prejudiced by having to file her own request *given the short period of time for processing an initial FOIA request*." *Feinman I* Defs.' Mem. at 9 (emphasis added).  This statement is based on the very specific facts in that case but egregiously out of touch with the facts in this case (and in fact with most FOIA cases involving the FBI or CIA).  In the *Feinman* litigation, Beirne submitted her FOIA request on April 13, 2009, and due to the FBI's unique policy of refusing up front to process FOIA requests for third parties absent a privacy waiver or proof of death (a policy also being challenged in the *Feinman* litigation), the FBI denied her request only four days later without according her any administrative appeal rights.  *Feinman I*, 680 F. Supp. 2d at 171. This four-day turnaround is extremely unusual for *any* agency, especially, as the FBI argued, "in light of the voluminous amount of FOIA requests that agencies constantly face" (*Feinman II* Defs.' Opp'n at 6).  Defendant even admits that "[m]any FOIA administrators are already overworked."  (Def.'s Mem. at 6.)  In comparison, the FOIA requests discussed *supra* paint a much more realistic picture of how long the "period of time for processing an initial FOIA request" actually is:

- FBI Request 1126251-000

    o  Initial submission (Apr. 6, 2009) – first final response (Jun. 29, 2009): 143 days
    o  Initial appeal (Sept. 16, 2009) – first appeal final response (Nov. 9, 2009): 54 days
    o  Remand (Nov. 9, 2009) – second final response (July 30, 2010): 263 days
    o  Second appeal (Sept. 23, 2010) – second appeal final response (Apr. 28, 2011): 217 days

- CIA Request F-2008-01105 (Count One)

  - Initial submission (Apr. 10, 2008) – final response (Feb. 27, 2009): 323 days
  - Appeal (Apr. 13, 2009) – final appeal response (unknown): 793 days and counting

- CIA Request F-2010-01186 (Count Three)

  - Initial submission (May 12, 2010) – final response (unknown): 399 days and counting

- DOJ Request 09-R0360

  - Initial submission (Feb. 9, 2009) – final response (Mar. 18, 2010): 402 days

- NGA Request 20080045F

  - Initial submission (May 12, 2008) – final response (July 28, 2010): 807 days

Defendant correctly states that "[t]here is nothing stopping NSC from filing a FOIA request with the CIA identical to request F-2008-01105." (Def.'s Mem. at 6.)  However, given that all agencies, including Defendant, handle their FOIA requests on a "First In/First Out" system, forcing NSC to refile an identical request would mean in effect that McClanahan, who signed the original JMP request *1,116 days ago*, of which Defendant has *still* has not completed the processing, would have to go back to the bottom of the queue.  While it is true that NSC *could* then file suit after twenty business days, such a policy would virtually *ensure* that such requesters would *always* proceed straight to litigation as soon as possible rather than wait for an administrative response, whereas they would be more likely to be patient and give the agency a chance to properly release the requested records if they could rest assured that they were not in store for another multi-year wait because of the processing time that had already elapsed before

the assignment.  In effect, forbidding assignments would result in the very consequence of increasing litigation (*Feinman I* Defs.' Reply at 5) that the FBI sought to avoid (*id.*).

As a matter of law, significant relevant case law counsels against forcing NSC (or any assignee) to refile a long-pending FOIA request just to avoid the "unnecessary burden" of "[r]equiring FOIA personnel to call or write the original requester to verify an alleged assignment by a 'simple phone call or written letter'" (*Feinman II* Defs.' Opp'n).  "As the Supreme Court has made clear, public awareness of the government's actions is a structural necessity in a real democracy.  Not only is public awareness a necessity, but so too is *timely* public awareness.  For this reason, Congress recognized that delay in complying with FOIA requests is tantamount to denial."  *Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 40-41 (D.D.C. 2006) (internal quotations and citations omitted) (emphasis in original); *see also Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("[S]tale information is of little value.").  By forcing sometimes extreme delays on requesters just to avoid the administrative work of verifying an assignment (which would be assuredly less burdensome than processing an entirely new request), Defendant's practice lies directly counter to the rules favoring *timely* access over *delayed* access.

For all the reasons stated above, and the reasons argued by Feinman incorporated herein by reference, this Court should find that *Feinman I* was decided in error and order Defendant to acknowledge that NSC has "assume[d] the substantive rights conferred by the assignment subject to all existing claims and defenses of the obligor" and correspondingly alter its processing of FOIA Request F-2008-01105 to reflect the change.  *See Smith v. Mallick*, 514 F.3d at 51.

### B.    *Feinman I* Is Distinguishable from This Case

Even if the Court finds that *Feinman I* was decided correctly, that case is factually distinguishable from the instant case.  Assuming *arguendo* that *Feinman I* represents one

scenario in which a requester is *not* allowed to assign rights and interests in a FOIA request to another person, the facts in this case do not lend themselves to such treatment for four primary reasons: a) McClanahan's name appears on the original FOIA request; b) JMP shares the same interests and purposes as NSC; c) McClanahan invested significant time and effort in the FOIA request while working at JMP; and d) NSC aggressively attempted to administratively prosecute its interest in FOIA Request F-2008-01105 for eight months before Defendant informed it that it was refusing to honor the assignment.[17]

### 1.    McClanahan's Name Appears on FOIA Request F-2008-01105

"[C]ourts have held that a plaintiff whose name does not appear on a FOIA request lacks standing to challenge its denial . . . ."  *Feinman I*, 680 F. Supp. 2d at 173, citing *McDonnell v. United States*, 4 F.3d 1227, 1236-37 (3d Cir. 1993); *see also* Def.'s Mem. at 5 (citing *Feinman I* and arguing, "NSC does not allege in its complaint that its name appeared on [FOIA Request F-2008-01105]").  Defendant correctly states NSC's position, but for the wrong reason.  NSC truly does not allege in its complaint that *its* name appeared on this FOIA request.  However, it does allege that *McClanahan's* name appeared on this FOIA request (a fact Defendant does not dispute).  By comparison, Beirne filed her original FOIA request *as an individual*, mentioning no other names, and then assigned it to *another individual*.  The mere fact that McClanahan's signature is on the original JMP request and he is mentioned as the JMP Point of Contact distinguishes this case from *Feinman I* and meets the requirement set forth in that opinion.

---

[17] The fifth distinguishing characteristic between the two cases—the difference in processing time between the four days in the *Feinman* litigation and the three years in this case—has already been discussed fully in Part I(A)(2) *supra*, so it will not be discussed again here except to redraw the Court's attention to the fact that a significant difference exists.

Defendant may attempt to argue that such an argument is contrary to *SAE Productions*, 589 F. Supp. 2d at 80 (finding that corporation lacked standing where original request was made by its president, who "did not adequately indicate that the FOIA Requests at issue . . . were made on the behalf of Plaintiff").  However, the facts in that case are the exact *opposite* of the facts in this case, and they do not compel a corresponding finding.  In *SAE Productions*, the underlying concept was that an individual who does not make it clear that he is making a request on behalf of a corporation keeps sole ownership of the request.  However, such a concept does not automatically mean that if an individual *does* make a request explicitly on behalf of the corporation where he is employed, he *loses* ownership of the request.  Taken with the fairly straightforward rule in *McDonnell* and *Feinman I* that a requester's name must *appear* on the original request, it is entirely conceivable that in such a situation as this, the individual and the corporation maintain joint ownership of the request.

### 2.    JMP Shares the Same Purposes and Interests as NSC

Judge Huvelle carefully cabined the scope of *Feinman I* to a fact pattern "where, as here, there is no indication (1) that the requester is unable to pursue her own litigation or (2) that the original requester shares the same interests and purposes as the plaintiff-assignee."  *Feinman I*, 680 F. Supp. 2d at 176.  Even if *Feinman I* did not meet either prong of this test, the instant case clearly meets the second prong (and the use of the disjunctive "or" means that only one need be met to satisfy the requirement).

This distinction rests on two basic concepts.  First, JMP shares the same *people* as NSC, with the exception of McClanahan, who branched off from one to charter the other.  Moss is the Deputy Executive Director of both organizations, and Zaid is the JMP Executive Director and a member of the NSC Board of Advisors.  Furthermore, the person who filed the FOIA request in

his official capacity as a JMP officer and the person who received the assignment of the FOIA request in his official capacity as an NSC officer *are the same person*—Kel McClanahan (who is also the NSC counsel in this action).  The only reason that JMP assigned its rights in several FOIA requests to NSC is because requiring McClanahan (as NSC Executive Director) to file identical FOIA requests to those he filed as JMP's Director of FOIA Operations would be needlessly redundant, especially given that with McClanahan's departure JMP had no further interest in the requests, as they were McClanahan's "pet projects."

Second, JMP and NSC share virtually all the same purposes and interests.  The only truly distinguishing feature between the two organizations is that NSC represents clients, whereas JMP does not.  *Compare* JMP website, http://www.jamesmadisonproject.org (last accessed Jun. 15, 2011) ("The James Madison Project is a Washington, D.C. non-profit organization that was established in 1998, to promote government accountability and the reduction of secrecy, as well as to educate the public on issues relating to intelligence and national security through means of research, advocacy and the dissemination of information."), *with* NSC website, http://www.nationalsecuritylaw.org (last accessed Jun 15, 2011) ("NSC exists to perform four primary functions: to lawfully acquire from the government material related to national security matters and distribute it to the public, to use this material in the creation of original publications discussing the respective subjects, to advocate for intelligent reform in the national security and information and privacy arenas, and to provide a low-cost alternative to certain deserving clients involved in security law or information and privacy law-related proceedings.").

When compared with the relationship between Beirne and Feinman, which was never specified in the *Feinman* litigation, the facts in this case are far more analogous to a reporter working for the *Washington Post* who files a complex FOIA request in the paper's name, then

goes to work for the *New York Times*, and convinces his employer at the *Post* to let him maintain control of the request (since the *Post*, a busy newspaper, does not necessarily have any interest in receiving the records being sought by one of its *former* reporters). In light of the basic truth that FOIA requests take years to process, especially by overburdened agencies like CIA, and active professionals of the 21st century regularly move from one job to another in far less time, public policy definitely supports making an exception to the rule in cases like this, even if a case like *Feinman I* does not meet the test. Refusing to honor assignments in such situations as this effectively forces requesters to choose between moving upward in their careers by diversifying their experience on the one hand and receiving the information they seek (which will require staying in one job for a potentially much longer time) on the other.

### 3.    McClanahan Invested Significant Time and Effort in FOIA Request F-2008-01105 While at JMP

"By contrast [with Thomas Sinito], Beirne did not invest any time, money, or other effort into pursuing this litigation. At most, according to the complaint, she sent one letter to the FBI and signed another letter that Feinman subsequently submitted to the agency." *Feinman I*, 680 F. Supp. 2d at 174. "FOIA should not be interpreted so as to let plaintiffs 'free-ride' on a requester's administrative exhaustion if the plaintiff did not *participate* in the underlying request." *Id.* (emphasis added). By contrast with Beirne, McClanahan filed the original request in April 2008, discussed the request with CIA FOIA analysts five times between May 2008 and February 2009, reviewed the releases made on February 27, 2009, and filed a detailed administrative appeal on April 13, 2009. These facts, demonstrating the degree to which McClanahan clearly "participate[d] in the underlying request," distinguish this case from *Feinman I*, especially when taken together with the fourth distinction.

4.    **NSC Aggressively Attempted to Prosecute the Request Administratively Before Being Informed of Defendant's Refusal to Honor the Assignment**

After Beirne assigned the rights in her FOIA request to Feinman in August 2009, Feinman then filed suit in October 2009.  *See id.* at 171.  This fact undoubtedly prompted Judge Huvelle's comment criticizing the idea of "let[ting] plaintiffs 'free-ride' on a requester's administrative exhaustion."  *Id.*  By contrast, after JMP assigned the rights in FOIA Request F-2008-01105 to NSC in October 2009, NSC attempted numerous times to participate in the administrative process, even to the point of filing a modified administrative appeal to ensure that it exhausted all of its administrative remedies.  (Compl. ¶ 13.)

On October 7, 2009, NSC informed Defendant of the assignment.[18]  (NSC-CIA Correspondence at 1-2, attached as Ex. Q.)  On December 29, 2009, NSC requested a status update on eighteen requests, including F-2008-01105, from Defendant.  (*Id.* at 3.)  Defendant did not respond.  On March 9, 2010, NSC re-requested a status update on nineteen requests, including F-2008-01105, from Defendant.  (*Id.* at 4-5.)  This letter specifically drew Defendant's attention to the October 7, 2009, assignment and asked Defendant to confirm that the assigned requests were being processed properly.  (*Id.*)  On April 8, 2010, Defendant finally wrote to NSC answering the previous two letters, but stated, "For each request referenced in those letters, we have responded directly by separate correspondence *to the party who submitted the request* with CIA's substantive response, or with information about the status."  (*Id.* at 6 (emphasis added).)  That same day, Defendant wrote to JMP providing an acknowledgement of its year-old appeal.

---

[18] Defendant states, "On May 25, 2010, NSC sent a letter to the CIA, claiming that JMP had assigned it all rights in FOIA request F-2008-01105."  (Def.'s Mem. at 2, citing Compl. ¶ 13.)  However, as the following timeline demonstrates, that was merely the *last* time that NSC so informed Defendant of the assignment.

(*Id.* at 7-8.)  This was the first indication that Defendant might be refusing to honor the assignments.

Giving Defendant the benefit of the doubt, NSC then wrote to Defendant on May 25, 2010, amending the previous appeal and clarifying that NSC now owned the rights to FOIA Request F-2008-01105.  (*Id.* at 9-10.)  Simultaneously, NSC sought assistance from OGIS.  (Compl. ¶ 14.)  Between April 2010 and January 2011, NSC worked with OGIS to remedy Defendant's refusal to honor the assignment.  (*Id.* ¶ 15.)

Compared with filing suit two months after the assignment, as Feinman did, NSC attempted without success three separate times to engage in a dialog with Defendant regarding this request, then attempted to file a new administrative appeal, and after being told that Defendant would not honor the assignment, continued to work with OGIS, the new "FOIA ombudsman," to remedy the situation.  Rather than "free-rid[ing] on [JMP's] administrative exhaustion," NSC arguably did more work to administratively exhaust this request than JMP did.  Any attempt by Defendant to accuse NSC of "free-riding" is simply laughable.

For the reasons stated above, even if the Court finds that *Feinman I* was correctly decided, the distinguishing facts in this case warrant different treatment.  Accordingly, this Court should order Defendant to acknowledge that NSC has "assume[d] the substantive rights conferred by the assignment subject to all existing claims and defenses of the obligor" and correspondingly alter its processing of FOIA Request F-2008-01105 to reflect the change.  *See Smith v. Mallick*, 514 F.3d at 51.

II.    **NSC CAN SUE DEFENDANT WITH RESPECT TO THE POLICY OF REFUSING TO HONOR ASSIGNMENTS**

Defendant mounts three attacks on Count Two of NSC's Complaint, two based in Rule 12(b)(1) and one based in Rule 12(b)(6).  These attacks can be categorized into two classes based on the underlying allegations.

A.    **If NSC Prevails in Count One, Two of Defendant's Arguments Cannot Succeed**

Defendant's first argument that NSC does not have standing to bring Count Two of its Complaint is predicated on this Court finding that JMP could not assign its legal interest in the five FOIA requests to NSC.  "[B]ecause it did not submit the FOIA requests it references, NSC lacks a legal interest in receiving information responsive to those requests.  And as established above, NSC should not be allowed to acquire FOIA interests by alleging that it was assigned them by the actual FOIA requester."  (Def.'s Mem. at 7.)  As stated *supra*, NSC concedes that if this Court finds that Defendant was correct to refuse to honor the assignment of FOIA Request F-2008-01105, then it should also dismiss Count Two.  However, as established above, the Court should find that this assignment was legitimate and proper, thereby allowing a further exploration of Defendant's policy to the contrary.

Defendant's argument under Rule 12(b)(6) that Defendant's policy does not violate FOIA (*id.* at 9) must similarly rise or fall with its argument against Count One.

B.    **The Court May Have Standing to Hear the APA and Mandamus Components of Count Two**

NSC concedes that the courts in this District are divided in how they approach declaratory relief for FOIA cases in which an ongoing agency policy is challenged.  *Payne* acknowledges the Court's jurisdiction under FOIA to declare a "sufficiently outrageous" ongoing practice to be

unlawful even if the agency reversed its position with respect to the FOIA request in question. *See* 837 F.2d at 494.  However, Judge Harris held in *Public Citizen v. Lew*, 127 F.Supp.2d 1 (D.D.C. 2000), that the APA was the proper source of authority for a declaratory judgment that the agencies in question violated the FOIA provision requiring publication of their "major information systems."  *Id.* at 7.

Similarly, NSC concedes that the mandamus component of Count Two is duplicative of the FOIA and APA components.  However, this is not a fatal flaw in and of itself.  "At this stage of the case, it would be premature and inappropriate to determine whether the relief of mandamus will or will not issue.  Certainly whether relief is available under the APA will be relevant to whether the mandamus relief requested will be necessary.  It is sufficient to determine that plaintiffs have stated a claim for relief under the mandamus statute.  Whether or not plaintiffs will prove that claim remains to be seen." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 219 F. Supp. 2d 20, 44 (D.D.C. 2002); *see also Citizens for Responsibility & Ethics in Wash. v. Exec. Office of the President*, 587 F. Supp. 2d 48, 63 (D.D.C. 2008) (dismissing APA claims but declining to dismiss duplicative mandamus claims).

NSC maintains that regardless of which authority the Court prefers to invoke, the practical result is a conclusion that the policy alleged in Count Two is definitely capable of judicial review and censure.  With that in mind, even a finding that the APA or mandamus is inapplicable to this case cannot justify complete dismissal of Count Two; it can only limit the manner in which that policy is reviewed to the framework established in *Payne*.

NSC concedes the bulk of Defendant's argument with respect to the applicability of the APA in most circumstances.  It is well recognized that the APA does not provide additional remedies where adequate remedies are already provided by another statute.  *See Bowen v.*

*Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review

in the APA to duplicate existing procedures for review of agency action."); *see also First Nat'l*

*Bank of Scotia v. United States*, 530 F. Supp. 162, 167 (D.D.C. 1982) ("It is . . . well-settled that

where Congress has provided an adequate procedure to obtain judicial review of agency action,

that statutory provision is the exclusive means of obtaining judicial review in those situations to

which it applies.").

      In fact, NSC does not dispute any of Defendant's characterization of the cases in which

the FOIA was held to provide just such an alternative remedy.  (Def.'s. Mem. at 8-9.)  In each of

the cases cited by Defendant, the remedy sought under the APA was in effect the same as the

remedy sought under the FOIA.  Adverse fee waiver decisions are properly reviewed under

FOIA, as are denials of news media status, denials of expedited processing, and all denials of

access to records.  However, Defendant takes one step too far when it attempts to imply that the

FOIA provides an alternative remedy in *all* cases.  As Judge Collyer distinguished, "an APA

claim is precluded *where a remedy under FOIA is available*."  *People for the Ethical Treatment*

*of Animals v. USDA*, No. 06-930, 2007 WL 1720136 at *7 (D.D.C. Jun. 11, 2007).  Simply put,

there are portions of FOIA that mandate agency action but provide no private cause of action, and

because a remedy under FOIA is not available, an APA claim is not precluded.

      *Public Citizen v. Lew* addressed one such provision.  *See* 127 F.Supp.2d 1.  This lawsuit

addressed the FOIA provision 5 U.S.C. § 552(g), which mandated that "[t]he head of each

agency shall prepare and make publicly available upon request, reference material or a guide for

requesting records of information from the agency, . . . including . . . (1) an index of all major

information systems of the agency; (2) a description of major information and record locator

systems maintained by the agency; and (3) a handbook for obtaining various types and categories

of public information from the agency . . . ."  5 U.S.C. § 552(g).  Despite the traditional preclusion that the FOIA provides in APA cases, the court held that it had jurisdiction to "review[ ] defendants' compliance with the FOIA and [Paperwork Reduction Act] provisions under the [APA], which empowers the Court to 'hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Public Citizen*, 127 F.Supp.2d at 7 (citations omitted).  In *Public Citizen*, the court realized that the court's ability to order an agency to turn over documents does not rectify all possible violations of the FOIA.

Similarly, the instant case could be read in a similar fashion.  Defendant suggests that if an agency does not honor an assignment of rights in a FOIA request, the assignee can always sue to obtain the documents in court (as NSC has).  Defendants may be right.  However, the Court could also find that ordering an agency to honor an assignment of rights does not fit squarely within the four corners of FOIA, which would remove it from *Payne*-style declaratory relief.  It is just this type of void that the APA and writ of mandamus were designed to fill.

In short, NSC concedes that if the Court finds that Defendant's policy is improper and issues a command to the agency to cease and desist, the Court will likely only take this action under either FOIA (by way of *Payne*), the APA, or mandamus, but not more than one.  NSC included all three options (which overlap in unclear ways in this area of law) simply to give the Court a choice of authorities, so that the Court does not rule that it cannot act because NSC did not invoke the correct authority for the remedy sought.  This Count was packaged as a "FOIA/APA/Mandamus" claim; two of those are bound to be dismissed.  NSC maintains that *one* should not.

## **CONCLUSION**

For the reasons discussed above, the Court should deny Defendant's Motion and order

Defendant to substitute NSC for JMP with respect to the assigned FOIA requests, accept NSC's

May 25, 2010, amendment to the administrative appeal of FOIA Request F-2008-01105, and

reverse its policy of refusing to honor assignments of rights in FOIA requests.

Date:   June 15, 2011

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1200 South Courthouse Road
Suite 124
Arlington, VA  22204
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*